# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRI CHIFFON ROWDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-325-CG |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Sherri Chiffon Rowden brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 9, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff initially filed a DIB application on July 30, 2012, alleging a disability-onset date of March 20, 2012. R. 9. The SSA denied Plaintiff's application on December 3,

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

2012. R. 9. Plaintiff did not appeal this determination.[2] R. 9. On July 19, 2013, Plaintiff protectively filed a new DIB application, this time alleging a disability-onset date of March 22, 2012. R. 9, 168-174, 215, 242, 262. Following a denial of her application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2015. R. 29-71, 99-102, 106-08. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 63-69. The ALJ issued an unfavorable decision on October 8, 2015. R. 6-24.

The Commissioner of Social Security uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 4, 2012. R. 11-12. At step two, the ALJ determined that Plaintiff had the severe medically determinable impairments of fibromyalgia, undifferentiated and mixed connective tissue disorder, hypertension, hepatitis C, asthma, dysfunction of major joints, obesity, an affective disorder, an anxiety-related disorder, and a somatoform disorder. R. 12. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12-15.

---

[2] The ALJ, applying principles of res judicata and administrative finality, found no reason to reopen Plaintiff's initial application or the resulting SSA determination, and he further determined that the relevant period for adjudicating Plaintiff's present claim began on December 4, 2012. R. 9.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 15-23. The ALJ found that Plaintiff had the residual functional capacity to

> perform light exertion work as defined in 20 CFR [§] 404.1567(b) with the following abilities and limitations: [Plaintiff] can occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of six hours in an eight-hour work day; sit (with normal breaks) for a total of six hours in an eight-hour work day; [Plaintiff's] ability to push and/or pull (including operation of hand and/or foot controls) is unlimited, other than as shown above for lift and/or carry above; [Plaintiff] can never climb a ladder, rope, or scaffold; [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; [Plaintiff] can perform simple tasks, detailed tasks, and some complex tasks; [Plaintiff] can relate to others on a superficial work basis; and [Plaintiff] can adapt to a work situation. [Plaintiff] has no other physical or mental limitations or restrictions of any kind.

R. 15. Rather than making a step-four determination, the ALJ proceeded to step five of the sequential evaluation process. R. 23.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 23-24. Relying upon the VE's testimony, the ALJ found that Plaintiff could perform light, unskilled occupations such as sales attendant, fast-food worker, and blood-donor-unit assistant, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 24; *see also* R. 65-66. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 24.

Plaintiff's request for review by the SSA Appeals Council was denied on January 31, 2017, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-3; 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff argues that the ALJ erred by rejecting portions of, and not providing "sufficient explanation" for his assignment of weight to, the opinion of Plaintiff's treating physician, Stanley Shadid, MD. *See* Pl.'s Br. (Doc. No. 16) at 10-13.

A. *The Treating-Physician Rule*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. § 404.1502(a) (2015). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has provided the claimant "with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* § 404.1527(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician is given such weight if it is both "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and not inconsistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996));[3] 20 C.F.R. § 404.1527(c)(2).

---

[3] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

5

A treating-physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2)-(6).

### B. *Opinion of Dr. Stanley Shadid*

The record reflects that Plaintiff received treatment from Dr. Shadid and his colleagues at OU Physicians Family Medicine in September and October 2013. R. 303-31 (Ex. 4F) (records reflecting office visits and testing). On June 16, 2015, Dr. Shadid completed a physical residual functional capacity questionnaire (the "PRFC"). R. 365-69 (Ex. 8F). Dr. Shadid assessed Plaintiff as having moderate limitation in her ability to deal with work stress and found that Plaintiff's symptoms would "frequently" interfere with her

attention and concentration. R. 366. Dr. Shadid found that Plaintiff would need to walk for periods of an eight-hour workday, but he did not specify how often or how long. R. 367. Dr. Shadid opined that Plaintiff would need the option to sit, stand, or walk "at will" and the option to take unscheduled breaks; however, Dr. Shadid found that Plaintiff would need to be absent from work less than once a month due to her impairments. R. 367, 369. Dr. Shadid also stated that Plaintiff would not require an assistive device to ambulate, would not need to elevate her feet during prolonged sitting, and would not have any significant limitations with respect to repetitive reaching, handling, or fingering. R. 368. Dr. Shadid left several questions on the form unanswered and wrote question marks next to certain questions regarding Plaintiff's exertional and postural capabilities. R. 365-69.

*C. Discussion*

In the written decision, the ALJ summarized Plaintiff's treatment records from OU Physicians Family Medicine and considered Dr. Shadid's PRFC in detail. R. 17, 21.

> Dr. Shadid opines [Plaintiff's] experience of pain or other symptoms is severe enough to "frequently" interfere with attention and concentration. The undersigned finds that [Plaintiff's] [RFC] fully and fairly satisfies such opinion. Dr. Shadid also opines [Plaintiff] has a "moderate limitation" in her ability to deal with work "stress." However, Dr. Shadid did not define what he meant by the term "moderate limitation[";] nor did he define what he meant by the term "stress." If Dr. Shadid defines "moderate limitation" the same as the Commissioner, then "moderate limitation" mean "there is more than a slight limitation in this area, but the individual is still able to function satisfactorily" (Medical Source Statement (Mental), definition of "moderate" limitation, SSA Form HA-1152-U2). Concerning work "stress," Dr. Shadid did not identify any particular "stressor," or any environment that would relieve such "stressor." The undersigned finds that [Plaintiff's] [RFC] fully and fairly satisfies such opinion. Thus, the undersigned gives some weight to these statements by Dr. Shadid.

7

> The remainder of the doctor's opinion is given little weight, as it is not a true medical opinion. The opinion does not address [Plaintiff]'s maximum remaining abilities, due to Dr. Shadid's failure to render opinions on exertional or other limitations. Also, Dr. Shadid declined to opine whether [Plaintiff] can walk "less than ½ a block" without rest; declined to opine how long [Plaintiff] can continuously sit or stand; declined to opine how many hours total [Plaintiff] can sit in an eight-hour work day; declined to opine how many total hours [Plaintiff] can stand/walk in an eight-hour work day; did opine that [Plaintiff] needs periods of walking around during the eight-hour work day, but declined to opine how often [Plaintiff] must walk or for how long [Plaintiff] must walk each time; opined [Plaintiff] needs a job which permits shifting positions at will from sitting, standing, or walking, but the undersigned finds such opinion is entitled to very little weight; opined [Plaintiff] must take unscheduled breaks during the eight-hour workday, but declined to opine how often this will happen or for how long [Plaintiff] must rest before returning to work; opined [Plaintiff] should not elevate her legs with prolonged sitting; opined [Plaintiff] does not use a cane or other assistive device while engaging in occasional standing/walking; declined to opine how many pounds [Plaintiff] can lift and carry; opined [Plaintiff] has no significant limitations in performing "repetitive" reaching, handling, or fingering; declined to opine whether [Plaintiff] is likely to have "good days" and "bad days"; opined [Plaintiff's] impairments or treatment would cause [Plaintiff] to be absent from work "less than once a month"; declined to identify any other limitation; and declined to opine the earliest date of limitations (Exhibit 8F).

R. 21-22.[4]

---

[4] In evaluating this opinion, the ALJ stated that "it is not clear whether 'Dr. *Stanley* Shadid' is the same person as 'Dr. *Chris* Shadid,' and Dr. Chris Shadid, M.D., signed the [PRFC] form." R. 21. The relevant records indicate that these are the same person. For example, the facility address on the treatment records matched the facility address on the PRFC, the PRFC questions were addressed to "Dr. Stanley Shadid," and Plaintiff's attorney identified the author of the PRFC as "claimant's treating physician Dr. Stanley Shadid" when the opinion was submitted to the ALJ. *See* R. 303, 308, 315, 365, 369. For the purpose of the Court's analysis, it is assumed that the ALJ considered the author of the PRFC to be a treating physician—a point not clearly stated in the written decision. On remand, the ALJ should either make that determination explicitly or state what medical relationship he concludes the author of the PRFC did have with Plaintiff. *See* 20 C.F.R. § 404.1527(c)(1)-(2); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (noting that reversal is required if the ALJ fails "to apply correct legal standards" or to show the court that he or she has done so).

A medical opinion is a "statement[] from [an] acceptable medical source[] that reflect[s] judgments about the nature and severity" of a claimant's impairments, including "symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Shadid's responses on the PRFC directly addressed Plaintiff's physical and mental conditions, prognosis, symptoms, capabilities, and work-related limitations. R. 365-69. The ALJ, however, disregarded much of the PRFC as "not a true medical opinion" because its statements as to what Plaintiff was still able to do were accompanied by some questions on the preprinted form that Dr. Shadid declined to answer. R. 21-22.

Defendant cites no authority to support this approach. The Court concludes that the rationale given by the ALJ does not constitute a "legitimate reason[]" to reject the PRFC's specific statements as to Plaintiff's restrictions and abilities. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (internal quotation marks omitted); *cf. Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports . . . ." (internal quotation marks omitted)). The ALJ was obligated to treat those opinions set forth by Dr. Shadid in the PRFC as treating-physician opinions. *See Watkins*, 350 F.3d at 1300. When a physician answers some questions but not others on a standard form, the absence of information on one point may affect the weight to be assigned an opinion rendered on a *factually related* point. But a mere failure to answer all the questions on the

form does not permit the ALJ to treat the answers given as something other than medical-source opinions.

Accordingly, it cannot be said that the ALJ properly evaluated Dr. Shadid's medical opinion, and remand is warranted. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 14th day of August, 2018.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE